UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY LONG,<br><br>   Plaintiff,<br><br> v.<br><br>ALAMEDA UNIFIED SCHOOL DISTRICT,<br><br>   Defendant. | Case No. 16-cv-06279-JST<br><br>**ORDER GRANTING SUMMARY JUDGMENT**<br><br>Re: ECF No. 51 |

Before the Court is Defendant Alameda Unified School District's (AUSD's) motion for summary judgment. The Court will grant the motion.

## I. BACKGROUND[1]

In 2003, AUSD hired Plaintiff, Judy Long, as a substitute teacher. ECF No. 26, First Amended Complaint ("FAC") ¶ 12; ECF No. 51-1 at 9. In 2004, she received a teaching assignment to teach English as a second language ("ESL") at Alameda Adult School. ECF No. 51-1 at 9. In addition to ESL, Long taught computer classes between 2007 and 2009. *Id.* at 9-10.

In 2010, Alysse Castro became Principal of the Alameda Adult School. ECF NO. 51-2 at 2. In August 2012, Joy Chua was employed by AUSD as the Assistant Principal of Educational Options, which included the Alameda Adult School. ECF No. 51-3 at 1-2. Chua worked under Castro. *Id.* In or around August 2013, Chua became the Interim Principal of the Alameda County Adult School. *Id.* at 2.

Chua terminated Long's employment on December 20, 2013. *Id.* at 4. Long alleges that she was terminated because she is African-American. *See* FAC. Long brings two causes of

---

[1] The following facts are not contested.

1  action: (1) discrimination/disparate treatment – race, color, religion, sex or national origin under

2  Title VII of the Civil Rights Act of 1964, and (2) discrimination on the basis of race in violation of

3  California Government Code section 12940. FAC at 4, 8.

4  AUSD now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that

2

precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." *Id.* "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. DISCUSSION

Long brings two causes of action: (1) discrimination/disparate treatment – race, color, religion, sex or national origin under Title VII of the Civil Rights Act of 1964, and (2) discrimination on the basis of race in violation of California Government Code section 12940. FAC at 4, 8.

The Court analyzes both claims under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252, (1981); *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 307 (2010). Long bears the initial burden of proving her prima facie case of racial discrimination, i.e., that: (1) she belongs to a protected class; (2) she performed her job duties satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly situated non-African-American individuals were treated more favorably than she was. *McDonnell Douglas Corp. v. Green*, 411 U.S. 802 (1973); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

Once Long establishes a prima facie case, the burden of production shifts to her employer to articulate a "'legitimate, nondiscriminatory reason for the challenged action.'" *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir.2009) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir.2000)). If AUSD articulates a legitimate nondiscriminatory reason, "then the presumption of discrimination drops out of the picture and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases." *Cornwell*, 439 F.3d at 1028 (internal quotation marks and citations omitted).

3

The threshold for establishing a prima facie case is "minimal." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir.2002). Even assuming, *arguendo*, that Long establishes a prima facie case, AUSD articulates a legitimate, nondiscriminatory reason for its actions. AUSD contends that Long was terminated because her teaching was inadequate. ECF No. 51 at 6.

To support this contention, AUSD cites to emails from Chua to Long about her classroom observations. *See* ECF No. 51-1 at 55, 58. Chua sent Long an email on December 5, 2013 where she described a preconference, observation, and post observation conference. ECF No. 51-1 at 55. Chua stated that she had spoken with Long about her desire to see students working in pairs and group discussion before the observation. Chua stated that she observed her lesson on November 5, 2013. *Id.* She was concerned that she did not see students working in pairs, that Long was located in the back of the room[2], and that there was not a language skills focus in writing and listening activities. *Id.* Chua noted that she had already spoken with Long about what she would look for in her next observation. *Id.* As a reminder, Chua provided Long with a list of specific things she would be looking for in her next observation and provided her the date of that evaluation. *Id.*

Chua also sent Long an email after the December 12, 2013 classroom observation. *Id.* at 58. Chua repeated her expectations and described her observations. *Id.* Chua listed several reasons that Long's teaching was not adequate for the school including that "[n]o language objective was explicitly taught during the class," there "was no learning objective for the lessons," and "[s]tudents were not asked to answer in full sentences during the discussion." *Id.*

AUSD also notes that Alysse Castro, the former Principal of Island High School, received a letter from Long's students in October 2012. ECF No. 51-2 at 2. The letter stated:

---

[2] Long argues that she was unfairly criticized for being in the back of the room during an observation. ECF No. 53 at 10-11. She contends that Chua was unfamiliar with the school's seating arrangements and that the desks are arranged in large pods with little focus on the front of the classroom. *Id.* Although a Title VII plaintiff may show pretext by putting into question whether the employer honestly believed its purported justification for termination, "it is not important whether [the employer's reasons] were *objectively* false." *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in original). Long offers no evidence that Chua did not believe the reasons she gave for Long's termination.

4

> [W]e feel unhappy right now *it has been five weeks* and we are not learning any new material . . . . [¶] Last year we learned all of this we need a higher level of English when we ask you for more or ask questions about the lesson, it seems like you are angry with us. [¶] Last year we finished *simple present tense, present continuous tense* and much more. We need more practice with all of this but not at this low level. [¶] And please don't take too many days with the same lesson because you give us the worksheets and *we take 2 or 3 days on the same paper*.

ECF No. 53 at 33 (emphasis in original). Castro was concerned about this letter and conducted classroom observations where she observed "many missed opportunities for language development" and observed Long wearing headphones in class. ECF No. 51-2 at 3. Castro met with Long to discuss her findings and recommendations. ECF No. 53 at 57. Her identified concerns included Long "wearing headphones and listening to music during instructional time" and "speaking in a harsh or critical tone to students," "lessons providing inadequate opportunities for student verbal participation," and "lessons providing inadequate visual support for students." *Id.* During the meeting, Long appeared committed to improving her instruction. ECF No. 51-2 at 3.

However, Castro "did not see a marked improvement in Plaintiff's performance over the remainder of the school year" and her performance continued to concern Castro. *Id.* Castro left the school at the end of the 2012-2013 school year. *Id.* She wanted to give her replacement the freedom to make her own staffing decisions so she did not dismiss any teachers at the end of that year. *Id.* Castro did discuss staff performance issues with Chua, including the issues Castro had observed with Long. *Id.*

AUSD has provided sufficient evidence to satisfy its burden to articulate a legitimate, nondiscriminatory reason for Long's dismissal.Thus, in order to survive summary judgment, Long must provide "direct or circumstantial evidence that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (internal quotation marks and citations omitted). Long may provide a combination of the two kinds of evidence. *See id.* The Ninth Circuit requires "very

5

little" direct evidence of discrimination to survive summary judgment. *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (internal citations omitted). However, when plaintiffs rely "on circumstantial evidence, that evidence must be specific and substantial." *Id.* (internal quotation marks and citation omitted); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998). [3]

Although Long does not specifically argue pretext in her opposition papers, the Court will consider whether the evidence she raises in her opposition is sufficient to survive summary judgment.[4] First, Long contends that because "Chua harbored racial animus she plotted to destroy Ms. Long as an ESL teacher." ECF No. 53 at 12. Long argues that she was not an inadequate teacher and that Chua "coordinated and orchestrated complaints made by two groups of students." *Id.* at 14. Beyond Long's unsubstantiated allegation, there is no evidence that Chua coordinated or prompted the student complaints about Long. In fact, former principal Alysse Castro submitted a declaration that she received a letter from students in October 2012, ECF No. 51-2 at 2, and Long does not accuse Castro of coercion or discrimination, ECF No. 51-1 at 41. Long contends that Chua "masterminded" the letter while she was assistant principal but rests this assertion entirely on speculation. ECF No. 53 at 9. Similarly, Long speculates that Chua "gave explicit instructions to Ms. Gonzalves on what to say" in an email summarizing "the feedback from Student Ambassadors," but provides no evidence of such an instruction. *Id.* at 11. Long does contend that "[i]n the field of ESL teaching, it is industry known students do not file grievances against

---

[3] "As noted in *Stegall*, the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), undermines *Godwin* to the extent that it implies that direct evidence is more probative than circumstantial evidence, but upholds *Godwin* to the extent that a plaintiff still needs to proffer specific and substantial evidence of pretext to overcome the summary judgment motion." *Njenga v. San Mateo Cty. Superintendent of Sch.*, No. C-08-04019 EDL, 2010 WL 1261493, at *20 n.5 (N.D. Cal. Mar. 30, 2010) (citing *Stegall*, 350 F.3d 1061, 1066 (9th Cir. 2003). *See also Cornwell*, 439 F.3d at1031 ("Although there may be some tension ... on this point—several of our cases decided after *Costa* repeat the *Godwin* requirement that a plaintiff's circumstantial evidence of pretext must be 'specific' and 'substantial'").

[4] Long submitted her opposition to motion for summary judgment as a pro se plaintiff. She filed a notice substituting Albert L. Boasberg, Esq. as counsel on April 18, 2018, four weeks after she submitted her opposition. ECF No. 55. The Court approved this substitution of counsel on the same day. ECF No. 56. Mr. Boasberg appeared at the hearing to argue on behalf of Ms. Long. He did not ask the Court for any additional time or briefing.

teachers." ECF No. 53 at 2. And she submits a letter[5] from attorney Marc Santamaria that notes that he has "never seen, had experiences with, or heard of ESL students filing complaints to school authorities or staff." *Id.* at 38. However, former principal Castro also noted in her declaration that it is rare for adult ESL students to directly criticize an instructor and that the letter concerned her deeply. ECF No. 51-2 at 2. Thus, the fact that adult ESL students rarely make complaints against teachers, if true, actually supports AUSD's legitimate non-discriminatory reason for terminating Long's employment. Santamaria also opines that there are words in the letter "that indicates someone influence [sic] the students in writing the letter." ECF No. 53 at 38. Santamaria has no basis in fact from which to speculate about how the letter was drafted, and his assertions are speculative.

Next, Long argues that Chua used "inaccurate observations" to "invalidate and dismiss Ms. Long." ECF No. 53 at 9. Long notes that she had taken on teaching a new level and was only given six days to make changes before she was dismissed. ECF No. 53 at 5. However, she does not dispute the evidence provided by AUSD that there were legitimate concerns about her teaching prior to December 2013. *See* ECF Nos. 51-1 at 54-59; 51-2. Long also contends that other teachers taking on new ESL levels were given support and that only she was criticized and ultimately fired. ECF No. 53 at 10. "A showing that [AUSD] treated similarly situated employees outside [Long's] protected class more favorably would be probative of pretext." *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). However, Long has not shown that these other employees were similarly situated. "[I]n general, we have upheld inferences of discriminatory motive based on comparative data involving a small number of employees when the plaintiff establishes that he or she is 'similarly situated to those employees *in all material respects*.'" *Beck v. United Food & Commercial Workers Union, Local 99,* 506 F.3d 874, 885 (9th Cir.2007) (emphasis added) (quoting *Moran v. Selig,* 447 F.3d 748, 755 (9th

---

[5] AUSD argues that Marc Santamaria's letter does not qualify as expert testimony because (1) Long failed to ever disclose Santamaria as an expert witness, (2) Santamaria does not qualify as an expert, and (3) the proposed expert testimony fails to satisfy the *Daubert* standard for admissibility. ECF No. 54 at 13-16. Because Long fails to meet her evidentiary burden even if the Court considers Santamaria's letter, the Court need not address these objections.

7

Cir.2006)). Long has not provided evidence that the other employees in question were sufficiently similarly situated. For example, she has provided no evidence that the other teachers she identifies had engaged in similarly problematic conduct. *See, e.g., Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004) (employee not similarly situated where he "did not engage in problematic conduct of comparable seriousness to that of [plaintiff]"); *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 663 (9th Cir. 2002) (evidence that three of four employees laid off were white did not "account for possible nondiscriminatory variables, such as job performance"). In fact, on the question of discipline, the evidence Long provides weighs against a finding of substantial similarity. That evidence shows that three Adult School teachers were disciplined – two of whom, including Long, were African-American, and one of whom was white. The other two teachers "improved and met performance requirements," while Long "failed to meet performance requirements [and was] terminated." ECF No. 53 at 78.

Long also argues that AUSD's proffered explanation is unworthy of credence because she was a successful ESL teacher. ECF No. 53 at 15-16. She notes that students did work in groups during her latest observation and that her students were successful on exams. *Id.* She also provides recommendations from prior employers and evaluations from former Distract administers dated in 2004 and 2011.[6] ECF No. 53 and 41-48. Past observations do not contradict AUSD's evidence about Long's employment at Alameda Adult School around the time of termination. *See Chew v. City & Cty. of San Francisco*, No. 13-CV-05286-MEJ, 2016 WL 631924, at *13 (N.D. Cal. Feb. 17, 2016), *aff'd*, 714 F. App'x 687 (9th Cir. 2017) (noting that declarations from some subordinates stating that plaintiff was a good supervisor did not contradict other evidence of plaintiff's deficiencies ). Long's subjective beliefs about her own teaching adequacy also cannot create a genuine issue of material fact. *See Cornwell*, 439 F.3d at 1028 n.6 ("A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action.") Long also submits materials

---

[6] AUSD argues that the Court should not consider Long's exhibits because she failed to authenticate them. ECF No. 54 at 12. The Court will not rule on this objection because Long has not met her burden even when the exhibits are considered.

8

used in her ESL lessons and the letter from Santamaria stating that her materials match standard student learning objectives.[7] ECF No. 53 at 37. However, this argument is irrelevant as AUSD does not claim to have terminated Long for using improper materials.

Long also argues that she has evidence of racial discrimination based on her allegation that Chua called her on December 20, 2013 to make a racially disparaging remark. ECF No. 53 at 17. Specifically, Long alleges that on that date, Chua called her without identifying herself and said, "Black nigger." Long acknowledges that the telephone call did not come from Chua's telephone number, but argues that the telephone call came from the same Southern California area code as Chua's telephone number. ECF No. 53 at 17. Long also states that she recognized Chua's voice.

Long made this allegation for the first time in her brief opposing summary judgment. Notably, Long was asked three separate times during her deposition whether she had any reason to believe that Chua had terminated her based on her race. ECF No. 51-1 (Long Depo.) at 112:1-2; 114:25-115:10; 116:16. In response, Long identified Chua's purported lack of a valid reason for termination; Chua's treatment of other African-American employees; and Chua's treatment of other, non-African-American ESL teachers. But she did not identify Chua's phone call.

The Court concludes that Long's allegation about Chua's alleged phone call must be stricken pursuant to the sham affidavit rule. The Ninth Circuit has explained the rule as follows:

> "'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale [v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)] (quoting *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991)). This sham affidavit rule prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy,* 952 F.2d at 266 (internal quotation marks omitted); *see also Van Asdale,* 577 F.3d at 998 (stating that some form of the sham affidavit rule is necessary to maintain the principle that summary judgment is an integral part of the federal rules). But the

---

[7] AUSD argues that Long failed to authenticate her exhibits, including the materials, and that Marc Sanatamaria should not qualify as an expert. ECF No. 54 at 12-16. As discussed above, the Court will not rule on these objections.

9

> sham affidavit rule "'should be applied with caution'" because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. *Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1264 (9th Cir.1993)). In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998–99.

Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012). In applying this rule, "a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember." *Id.* However, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Id.* Given the extreme nature of the epithet in Chua's alleged phone call to Long, the Court must regard the absence of any mention in her deposition as a contradiction. Long provides no explanation for this contradiction in her brief, however. At the hearing on this motion, the Court asked Long's attorney whether Long had any explanation for this contradiction, and he offered none. Accordingly, the Court will not consider this evidence.

Finally, Long argues that another black employee, Rachel Williams, was not re-hired. ECF No. 53 at 21-22. However, the record does not establish that Chua or any other AUSD employee acted with racial animus towards Williams. *See Anthoine*, 605 F.3d at 753-54 ("Evidence that an employer terminated all three of its male employees on the same day could show gender-based animus. In this case, however, [plaintiff] has not offered any specific evidence about the circumstances in which the other men were terminated.)

**CONCLUSION**

Long has not met her burden of offering "direct or circumstantial evidence that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not

/ / /

/ / /

/ / /

believable." *Anthoine*, 605 F.3d at 753.  There is no triable issue of fact as to the ultimate issue of race-based discrimination.  Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated:  May 22, 2018

‎ _____
JON S. TIGAR
United States District Judge